UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROMEO URIARTE,
Plaintiff,

v.

BMO BANK, N.A.,
Defendant.

Case No. 26-cv-01968-JSC

**ORDER RE: DEFENDANT'S MOTION TO DISMISS**

Re: Dkt. No. 21

Plaintiff Romeo Uriarte alleges his mortgage servicer, Defendant BMO Bank, N.A., recorded, and began foreclosing on his home pursuant to, a Notice of Default which contains inaccurate information. (Dkt. No. 18.)[1] Plaintiff brings California-state-law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of California Civil Code § 2924.17's requirements regarding Notices of Default, and violation of California's Unfair Competition Law ("UCL"). Pending before the Court is Defendant's motion to dismiss. (Dkt. No. 21.) After carefully considering the parties' arguments, and having had the benefit of oral argument on July 24, 2026, the Court GRANTS Defendant's motion, with leave to amend, for the reasons set forth below.

**FIRST AMENDED COMPLAINT ("FAC") ALLEGATIONS**

Plaintiff Romeo Uriarte owns a home in Oakland, California. (Dkt. No. 18 ¶ 5.) Defendant BMO Bank, N.A. is "the servicer of Plaintiff's" mortgage on the home. (*Id.* ¶ 9.) As such, Plaintiff and Defendant "are parties to the Deed of Trust and Promissory Note" for the mortgage. (*Id.* ¶ 22.) Plaintiff's mortgage payment was $4,479.61 per month. (*Id.* ¶ 10.)

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

Plaintiff "made timely payments […] each month" of 2024, except he missed his May 2024 and June 2024 payments. (*Id.* ¶¶ 10, 13.) He also made payments in December 2024 and January 2025, but the payments "were never applied to" his loan. (*Id.* ¶ 11.)

Consequently, on March 14, 2025, Defendant recorded a Notice of Default against Plaintiff's property. (*Id.* ¶ 12.) As relevant here, the Notice stated "as of March 11, 2025," Plaintiff was in default, owing "$26,834.06."[2] (Dkt. No. 23, Ex. D at 1.) The information in the Notice was "demonstrably false" because the Notice effectively stated "Plaintiff's loan was in default for failure to make payments due on October 1, 2024, and each month thereafter."[3] (Dkt. No. 18 ¶ 13.) The $26,834.06 amount due represents "nearly six months of missed payments […] when, in fact, Plaintiff had only missed two payments up to" the time Defendant recorded the Notice. (*Id.* ¶¶ 13, 14.)

Plaintiff applied for a loan modification in April 2025, then Plaintiff and Defendant entered "a forbearance agreement" in July 2025. (*Id.* ¶¶ 16, 18.) The agreement

> indicated that Plaintiff could make reduced monthly payments in the amount of $1,3773.43 per month from August 1, 2025, to January 1, 2026. The Forbearance Agreement further provide [sic] that after the plan expires; Plaintiff would need to either bring the loan current or request the loan be reviewed for another workout plan.
>
> Specifically, section 4 of the document titled APPROVED FORBEARANCE AGREEMENT states:
>
> 4. The parties hereto desire to enter into an agreement, which, after the plan expires, the Mortgagor(s) will need to either: 1) Pay the loan in full, 2) Bring the loan current, or, 3) Request the loan be reviewed for another workout plan, Pending Investor Approval, needed to satisfy the conditions required for reinstatement.

(*Id.* ¶¶ 16-17.)

Plaintiff "made all payments under the forbearance agreement as required" and, after the agreement concluded on January 1, 2026, "Plaintiff submitted a loan modification application to

[2] The Court grants Defendant's unopposed request for judicial notice. (Dkt. No. 23.)
[3] The Notice of Default does not contain a statement Plaintiff did not make his October payment. (*See generally* Dkt. No. 23, Ex. D.) Nor does the Notice identify when any of Plaintiff's missed payments occurred or otherwise explain how Defendant calculated the $26,834.06 amount. (*See generally id.*) Nonetheless, Defendant's motion does not dispute Plaintiff's allegations characterizing the Notice.

Defendant." (*Id.* ¶ 18.) But Defendant did not "review[]" Plaintiff's application "as required under the Forbearance Agreement." (*Id.* ¶ 19.) "[I]nstead," Defendant "immediately caused a Notice of Trustee's Sale to be recorded on February 4, 2026, setting a foreclosure sale for Plaintiff's property on March 12, 2026."[4] (*Id.* ¶ 19.)

Plaintiff alleges Defendant

(1) breached the Deed of Trust and Promissory Note,

(2) breached the forbearance agreement by not reviewing his loan modification application,

(3) breached California's implied covenant of good faith and fair dealing by not reviewing his loan modification application,

(4) violated California Civil Code § 2924.17 by recording a Notice of Default with inaccurate information, and

(5) violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.

(*Id.* ¶¶ 20-70.) Plaintiff seeks damages, "[a] full accounting of Loan [sic]," and an injunction "preventing Defendant[] […] from foreclosing on the loan until an accurate reinstatement quote is generated[.]" (*Id.*, Prayer.)

***

Defendant moves to dismiss all claims.

## DISCUSSION

### I. Breach of Deed of Trust and Promissory Note

Plaintiff alleges Defendant breached the Deed of Trust and the Promissory Note by "failing to apply" Plaintiff's December 2024 and January 2025 payments and "[b]y recording a Notice of Default requesting payment of an amount above" the actual amount for which Plaintiff was in

[4] Four days after filing his original complaint, on March 10, 2026, Plaintiff informed the Court Defendant postponed the foreclosure sale after Plaintiff filed an application for a Temporary Restraining Order. (Dkt. No. 9.) Nearly three months later, Plaintiff filed the operative First Amended Complaint in which he repeats the allegation Defendant set a foreclosure sale for March 12, 2026. (Dkt. No. 18 ¶ 19.) The parties do not explain whether the foreclosure sale has been re-scheduled for a date certain.

United States District Court
Northern District of California

default. (*Id.* ¶¶ 24-25, 27-31.)[5] Under California law, the elements of a breach-of-contract claim are "the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant and damages." *First Com. Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001). Under California law, courts interpret contracts based on "the mutual intention of the parties at the time the contract is formed," which "is to be inferred, if possible, solely from the written provisions of the contract." *AIU Ins. Co. v. Sup. Ct.*, 51 Cal. 3d 807, 821–22 (1990). Defendant asserts Plaintiff's claim must be dismissed because Plaintiff's FAC admits he failed to make payments and therefore did not perform under either contract. The Court agrees.

Drawing inferences in Plaintiff's favor, Plaintiff's allegations compel the inference he cannot satisfy the element of "performance by the plaintiff or excuse for nonperformance." *Reece*, 89 Cal. App. 4th at 745. Plaintiff expressly alleges he did not make the May 2024 or June 2024 payments on his loan. (Dkt. No. 18 ¶ 10.) Defendant's alleged breaches–failing to apply the December 2024 and January 2025 payments then recording a Notice in March 2025–occurred after Plaintiff's default. (*Id.* ¶¶ 11-12.) Under California law, "one party to a contract cannot compel another to perform while he himself is in default. Therefore, […] plaintiff having […] alleged in [his] complaint, that [he] had [not] performed [his] part of the contract, [i]s not entitled to enforce its terms against" Defendant. *Lewis Pub. Co. v. Henderson*, 103 Cal. App. 425, 428 (1930); *see also Marquez v. Select Portfolio Servicing, Inc.*, 738 F. App'x 439, 440 (9th Cir. 2018) (affirming dismissal because under *Reece*, "performance by the plaintiff or excuse for nonperformance is a necessary element for a breach of contract claim," the plaintiff did not allege "she made the payments" under her loan, and "Defendants' alleged failure to comply with certain notice requirements in the notice of default cannot excuse [the plaintiff]'s failure leading up to that point to make payments on the loan") (cleaned up). So, given Plaintiff's allegations compel the inference he did not perform under the contract, Plaintiff's claim Defendant breached the Deed of

---

[5] Although Defendant does not raise the issue, Plaintiff's FAC does not identify a term in either the Deed of Trust or the Promissory Note which was breached. (*See generally* Dkt. No. 18.) The Deed of Trust does not appear to contain a term pertaining to inaccuracies in a Notice of Default. (*See* Dkt. No. 23, Ex. A at 13, 17 (describing the lender's duties with respect to notifying the borrower of a default).)

Trust and Promissory Note must be dismissed as a matter of law.

Plaintiff's sole cited case to the contrary–*Pfeifer v. Countrywide Home Loans, Inc.*, 211 Cal. App. 4th 1250, 1279 (2012)–is inapposite. Under California law, a cause of action for wrongful foreclosure which seeks to set aside a foreclosure sale requires the plaintiff to allege tender of the full amount due. *Id.* at 1279–81. But a wrongful foreclosure claim does not require plaintiffs to tender if the claim seeks "to prevent a sale in the first place" on the basis the foreclosure is void. *Id.* at 1280. In *Pfeifer*, a deed of trust required a lender meet with the borrower face-to-face before it could foreclose on the borrower's property, and the lender initiated a foreclosure without a face-to-face meeting. *Id.* at 1267. Applying California law regarding tender, *Pfeifer* held "[t]he fact that a borrower is in arrears does not allow the lender to circumvent the conditions precedent," *i.e.*, the plaintiff need not allege tender to assert a wrongful foreclosure claim because his claim sought to prevent a sale on the basis the lender had not met with the borrower face-to-face. *See id.* at 1280.

*Pfeifer* is therefore inapposite and does not save Plaintiff's breach-of-contract claim. The case did not hold a plaintiff who defaulted on a loan, and therefore has not alleged performance of a contract, may assert a breach-of-contract claim on that loan. Plaintiff's quote regarding "a borrower […] in arrears" refers to a rule specific to wrongful foreclosure claims, and Plaintiff does not bring such a claim.

Accordingly, the Court grants Defendant's motion as to Plaintiff's first claim.

**II. Breach of Forbearance Agreement and the Implied Covenant**

Plaintiff asserts Defendant breached the forbearance agreement and the implied covenant of good faith and fair dealing by failing to review Plaintiff's second loan modification application and instead pursuing foreclosure. The forbearance agreement states:

> The parties hereto desire to enter into an agreement, which, [sic] after the plan expires, the Mortgagor(s) will need to either: 1) Pay the loan in full, 2) Bring the loan current, or, 3) Request the loan be reviewed for another workout plan, Pending Investor Approval, needed to satisfy the conditions required for reinstatement.

(Dkt. No. 18 ¶¶ 16-17.)

Defendant asserts Plaintiff has not alleged a breach of the agreement or the implied

United States District Court
Northern District of California

covenant because "the forbearance agreement, by its own terms, did not obligate BMO to grant or even review a loan modification" and because a loan modification request is subject to investor approval. (Dkt. No. 21-2 at 11.) And because the forbearance agreement does not provide Plaintiff the right to have his application reviewed, Plaintiff's implied covenant claim fails because the covenant does not impose substantive duties beyond those contained in the agreement. The Court disagrees.

"The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 348 (2000) (italics in original). The covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.* There, the court held an employer does not violate the implied covenant when it terminates an employee arbitrarily or without good cause when "the employment contract itself allows the employer to terminate at will," because under such a contract, an employer's "motive and lack of care […] are, in most cases at least, irrelevant." *Id.* at 351.

Here, drawing all inferences in Plaintiff's favor, Plaintiff alleges facts sufficient to support an inference Defendant breached the forbearance agreement and the implied covenant. Defendant emphasizes the agreement does not state whether Defendant must review a loan modification application. But the contract's silence means it is ambiguous as to whether Defendant has a duty to review a loan modification application, and under California law, "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist," *i.e.*, against the contract's drafter and in favor of the non-drafting party. Cal. Civ. Code § 1654; *see Sandquist v. Lebo Automotive, Inc.*, 1 Cal. 5th 233, 247–48 (2016) ("ambiguities in written agreements are to be construed against their drafters. […] The reason for this rule is to protect the party who did not choose the language from an unintended or unfair result.") (cleaned up).

Interpreting the agreement's ambiguity in Plaintiff's favor, the agreement supports an inference the parties intended for Defendant to, at a minimum, review Plaintiff's loan modification application. The agreement's text expresses the parties "desire" to enter into a loan modification

agreement after the initial modification plan expired, and for a modification to occur, Plaintiff "will need to [… r]equest the loan be *reviewed* for another workout plan." (Dkt. No. 18 ¶ 16 (emphasis added).) The word "desire" supports an inference "the mutual intention of the parties" is to enter another loan modification agreement. *See AIU Ins. Co.*, 51 Cal. 3d at 821–22. Moreover, that a loan modification is "pending investor approval" means the parties likely intended for Defendant to at least review Plaintiff's application because ordinarily one does not approve a request without reviewing it. (Dkt. No. 18 ¶ 16 (cleaned up).) So, given the forbearance agreement can be read to obligate Defendant to at least review Plaintiff's loan modification application, drawing inferences in Plaintiff's favor, Plaintiff has alleged facts supporting an inference Defendant breached the forbearance agreement and, by extension, the implied covenant of good faith and fair dealing.

Defendant's argument the phrase "pending investor approval" is a condition precedent which must occur before a duty to review arises is unavailing. Defendant appears to concede the forbearance agreement represents "a promise to review the loan for modification," but not a promise to grant a loan modification application. (*See* Dkt. No. 21-1 at 11.) To the extent Defendant asserts investor approval is a condition precedent to a duty to *review* Plaintiff's application, that argument fails because, again, the language supports an inference one does not approve an application without first reviewing it.

Finally, Defendant's reliance on *Rossetta v. CitiMortgage, Inc.*, 18 Cal. App. 5th 628 (2017) is misplaced. Defendant cites *Rossetta* as holding Defendant did not owe Plaintiff any duty with respect to Plaintiff's loan modification application, but the cited portions of *Rossetta* address a duty of care, which pertains to negligence, not contractual duties. *Id.* at 638. So, *Rossetta* is inapposite.

So, the Court denies Defendant's motion as to Plaintiff's second and third claim.

### III. Civil Code Section 2924.17 Claim

"Plaintiff seeks injunctive relief" under California Civil Code Section 2924.17. (Dkt. No. 18 ¶ 63.) This statute is part of Civil Code Section 2924, California's Homeowner Bill of Rights ("HBOR"). The HBOR "provide[s] a comprehensive framework for the regulation of a



United States District Court
Northern District of California

nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust." *Knapp v. Doherty*, 123 Cal. App. 4th 76, 86 (2004) (cleaned up). Under Section 2924, "the availability of injunctive relief […] is governed exclusively by its two provisions […] sections 2924.12(a)(1) and 2924.19(a)(1)[.]" *Lucioni v. Bank of America, N.A.*, 3 Cal. App. 5th 150, 155 (2016). The former provision authorizes "an action for injunctive relief due to a *material violation* of section […] 2924.17." *See id.* at 158 (emphasis added).

Section 2924.17(a) provides "a notice of default […] recorded by […] a mortgage servicer in connection with a foreclosure […] shall be accurate and complete and supported by competent and reliable evidence." Cal. Civ. Code § 2924.17(a). Additionally, "[b]efore recording" a notice of default, "a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose." *Id.* § 2924.17(b). Here, Plaintiff alleges Defendant violated Section 2924.17(b): the "demonstrably false" information in the Notice of Default shows "Defendant failed to evaluate competent and reliable evidence to substantiate the purported loan default" before filing the notice of default. (Dkt. No. 18 ¶¶ 58-62); *see* Cal. Civ. Code § 2924.17(b).

Defendant asserts Plaintiff "does not allege a material violation of" Section 2924.17, which is required to seek injunctive relief. The Court agrees. "[T]he HBOR creates liability only for material violations that have not been remedied before the foreclosure sale is recorded. A material violation is one that affected the borrower's loan obligations, disrupted the borrower's loan-modification process, or otherwise harmed the borrower." *Billesbach v. Specialized Loan Servicing LLC*, 63 Cal. App. 5th 830, 837 (2021).

> Ultimately, at this stage of the analysis, we ask whether the alleged violation undermined the overall purpose of the HBOR. In doing so, we need not recharacterize the purpose of the HBOR because the Legislature has stated it plainly: "The purpose of the act that added this section is to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure."

*Morris v. JPMorgan Chase Bank, N.A.*, 78 Cal. App. 5th 279, 304–05 (2022) (quoting Cal. Civ. Code § 2923.4) (internal citation and quotation marks omitted).

United States District Court
Northern District of California

In *Knapp*, the California Court of Appeal held inaccuracies in a lender's Notice of Default did not constitute a material violation of the HBOR. 123 Cal. App. 4th at 97–99. There, the borrowers asserted a Notice of Default was defective because it stated the borrowers defaulted on July 1, 2000, when they actually defaulted in January 2001, and it overstated the amount due. *Id.* at 97–98. The court first held the inaccurate date was immaterial.

> Despite this inaccuracy as to the date of default, there was no evidence presented that the Default Notice did not properly state the nature of the default (failure to make installment payments and to pay late charges), or the amount of the default ($38,011.40[).] If one breach is correctly stated, an erroneous statement of other defaults does not invalidate the [default] notice. As stated in one case in which a challenge to a foreclosure was rejected where the default notice accurately stated certain defaults but was inaccurate as to one of the installments for which an extension was granted: [t]he statute is sufficiently complied with if the notice of default contains a correct statement of some breach or breaches sufficiently substantial in their nature to authorize the trustee or beneficiary to declare a default and proceed with a foreclosure. Since reliance on these breaches is manifestly enough to authorize the proceeding, the circumstance that erroneous statements may appear in the notice about other breaches, which breaches, if they occurred, would only be cumulative so far as their effect was concerned, may properly be treated as immaterial.
>
> One of the signal purposes of the notice of default is to advise the trustor of the amount required to cure the default. There is no evidence that Borrowers here were misled in any way by the Default Notice. For instance, the fact that the date of default was stated incorrectly in the Default Notice did not cause Borrowers to act or fail to act in any way that resulted in their loss of the Property.

*Id.* at 98–99 (internal citations and quotation marks omitted).

Then, applying a summary judgment standard, the court "reject[ed]" the borrower's challenge regarding the Notice's statement of the amount due. *Id.* The court rejected that argument because the borrowers did not adduce evidence the Notice overstated the amount due. *See id.* at 99 & n.16. The court did not directly address whether, and under what circumstances, such an overstatement would constitute a violation of Section 2924, but, when characterizing the borrower's argument, the court quoted a practice guide which said "[a] material defect in the notice, such as a <u>*gross*</u> misstatement of the amount in default, voids the sale." *Id.* (cleaned up) (emphasis added).

Applying those cases here, the Court dismisses Plaintiff's Section 2924.17 claim because

United States District Court
Northern District of California

drawing all inferences in Plaintiff's favor, Plaintiff does not allege facts sufficient to support an inference the inaccurate information in the Notice of Default "affected [Plaintiff's] loan obligations, disrupted [Plaintiff's] loan-modification process, or otherwise harmed [Plaintiff]" in a way that is inconsistent with the HBOR's purposes. *See Billesbach*, 63 Cal. App. 5th at 837. Plaintiff alleges a technical violation of Section 2924.17: the incorrect date of missed payments and amount due shows "Defendant failed to evaluate competent and reliable evidence" before recording the Notice of Default. (Dkt. No. 18 ¶¶ 58-62.) In particular, Plaintiff alleges the Notice of Default overstated the amount due by approximately $9,000.00. (*Id.* ¶¶ 58, 60.) But Plaintiff does not allege any facts regarding how this incorrect information affected him. He does not allege the Notice affected his "loan obligations" or "loan-modification process." *Billesbach*, 63 Cal. App. 5th at 837. Nor does he assert, for instance, the inaccurate information "cause[d him] to act or fail to act in any way that resulted in [his] loss of the Property." *Knapp*, 123 Cal. App. 4th at 98–99.

Rather, as noted above, he expressly alleges he was in default. Therefore, drawing inferences in Plaintiff's favor, Plaintiff's allegations do not permit an inference the Notice of Default materially violated Section 2924.17. Under *Knapp*, Section 2924 "is sufficiently complied with if the notice of default contains a correct statement of some breach or breaches sufficiently substantial in their nature to authorize the trustee or beneficiary to declare a default and proceed with a foreclosure." 123 Cal. App. 4th at 98 (cleaned up). The Notice of Default correctly stated Plaintiff defaulted on his loan, which is sufficient to "authorize [Defendant […] to declare a default and proceed with a foreclosure." *Id.* (cleaned up). So, given Plaintiff does not allege or attempt to explain how the Notice's alleged inaccuracy harmed him, drawing inferences in his favor, his allegations do not permit an inference the Notice materially violated Section 2924.17.

Plaintiff's argument "there are significant differences between *Knapp* and this case" because "[i]n *Knapp*, there was no credible assertion that the amount stated in the NOD was inaccurate" (Dkt. No. 26 at 14) is unavailing. True, *Knapp* rejected the borrower's challenge to the Notice' amount on evidentiary grounds. But Plaintiff does not address *Knapp*'s reasoning

regarding materiality, or that of *Billesbach* and *Morris*.[6] Those cases require Plaintiff to, at a minimum, explain how the Notice's inaccurate amount harmed him. Drawing all inferences in his favor, Plaintiff has not alleged facts sufficient to support an inference that occurred.

Accordingly, the Court dismisses Plaintiff's Section 2924.17 claim.

**IV. UCL Claim**

As alleged, Plaintiff's UCL claim is derivative of his other claims. (*See* Dkt. No. 18 ¶¶ 65 ("Defendants' conduct, *as alleged above*, constitutes unlawful, unfair, and/or fraudulent business practices[. …] § 17200 et seq. incorporates […] other statutes and laws[.]"), 66 ("Defendants' violations of each of the above incorporated causes of action constitute unfair business practices").) Plaintiff's opposition confirms this. (*See* Dkt. No. 26 at 16 ("Here, Plaintiff has sufficiently alleged that Defendant violated California Civil Code § 2924.17. Since Plaintiff's antecedent claim remains valid, Plaintiff's claims under the UCL's unlawful prong should also persist.")) Given the Court dismisses Plaintiff's other claims, the Court dismisses Plaintiff's derivative UCL claims.

## CONCLUSION

As explained above, the Court GRANTS Defendant's motion to dismiss as to Plaintiff's first, fourth, and fifth claims, but DENIES the motion as to Plaintiff's second and third claims. As Plaintiff has not had the opportunity to amend his claims, dismissal is with leave to amend. In light of the parties' disclosure at oral argument the parties agreed to a new forbearance agreement in April 2026, the Court will not impose a deadline to file an amended complaint and holds amendment in abeyance pending the expiration of the agreement. Any amended complaint may not allege new claims or add parties without further leave of court. The Court sets an initial case

---

[6] The only authority Plaintiff cites for his position the Notice has a material violation is "*9250 Big Horn Holdings v. Sheba Dev. Llc*, 2019 Cal. Super. LEXIS 37539," which supposedly cited *Knapp* and held "[t]he primary purpose of a notice of default is to provide notice of the amount in arrears and an opportunity to cure the default." (Dkt. No. 26 at 15 (cleaned up).) The Court could not locate that case. Plaintiff's citation to the reporter "2019 Cal. Super" suggests *9250 Big Horn* is an unpublished trial-court decision, which does not bind this Court. *MGM Grand Hotel, Inc. v. Imperial Glass Co.*, 533 F.2d 486, 489 n.5 (9th Cir. 1976). The Court agrees a Notice of Default's purpose is to inform the borrower of the amount due and to provide him an opportunity to cure the default. But, again, Plaintiff has not explained why the Notice's misstatement of the amount due violates that purpose in a way that is *material*.

management conference for Wednesday, October 7, 2026 at 2:00 pm by Zoom video. A joint statement is due one week in advance.

This Order disposes of Docket No. 21.

**IT IS SO ORDERED.**

Dated: July 24, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California